## Smith's Estate

Before Van Dusen, P. J., Stearne, Sinkler, Klein, Bolger, and Ladner, JJ.

*John Arthur Brown, Joseph J. Brown, D. Alexander Wieland,* and *George C. Denniston,* for exceptant.

*John Martin Doyle, John F. Thaete,* and *Walter B. Gibbons,* contra.

SINKLER, J., January 31, 1941. — Decedent, Agnes Smith, died March 1, 1939. At the audit of the account filed by her executor, a claim was presented by Fidelity-Philadelphia Trust Company, continuing substituted trustee under the will of Thomas Simpson, deceased, upon a bond executed by her, and secured by mortgage of real estate formerly owned by her. The auditing judge disallowed the claim, and exceptions have been taken to his finding.

The mortgage bond in question was executed by decedent on August 19, 1918, the principal sum to become due three years thereafter. On July 1, 1919, decedent conveyed the mortgaged premises, under and subject to the mortgage, to one Dobson. He, on April 7, 1920, conveyed the premises, under and subject to the mortgage, to Mary D. Brooks, who at all times thereafter has been the real owner thereof. On July 5, 1929, Mary D. Brooks, hereafter called the grantee, and Fidelity-Philadelphia Trust Company, hereafter called the mortgagee, entered into an agreement whereby the mortgage (then in default as to the payment of principal) was extended for three

years, and the grantee "guarantees and covenants to make prompt payment of the interest and the principal of the bond."

After the conveyance of the property by decedent, payments of interest were made by the grantees and real owners of the premises. No default exists in the payment of interest or in the payment of taxes. The principal sum of the mortgage debt is now overdue.

Objection to the allowance of the mortgagee's claim was made at the audit upon the ground that lapse of time raised a presumption of payment. The adjudication recites that, while 20 years had elapsed since the last payment of interest by decedent, in February 1919, less than 20 years have elapsed since the principal of the mortgage bond became due, on August 19, 1921. The auditing judge disallowed the mortgagee's claim.

The mortgagee has filed exceptions to the adjudication, and contends that the auditing judge erred in finding that there was a fair presumption that decedent had been discharged; in holding that under special circumstances the lapse of less than 20 years may be sufficient to raise a presumption of payment; in finding that the fact that the mortgagee looked to the grantee for payment of interest was a circumstance sufficient to discharge decedent; and, finally, in disallowing the mortgagee's claim.

The basis for the ruling of the auditing judge, according to the adjudication, is as follows:

"During all of this period of 20 years, however, there was no suggestion of a claim against decedent, and while of course it cannot be said that there is a presumption of the payment of the debt itself, it is a fair presumption that the personal liability of the debtor has been discharged."

The disallowance of the mortgagee's claim is based upon a conclusion of fact that the mortgagor was released of liability. The auditing judge later states:

"The fact that the creditor during all the period mentioned looked to the new owner for the payment of the

interest is in my opinion a circumstance sufficient to discharge the former owner, the mortgagor."

This would suggest that the mortgagor was discharged by operation of law when the mortgagee accepted payments of interest from the new owner.

Whether viewed as a conclusion of law or as a conclusion of fact, we cannot concur in the disallowance of exceptant's claim. In our view, the facts presented in this case, as above set forth, do not, as a matter of law, amount to a release of the mortgagor or a discharge of her obligation. The fact that the mortgagee collected the interest payments from the grantees of the land and did not make any demand on the mortgagor does not work a release by operation of law, or result in a novation substituting the grantees as obligors. Even the execution by the present grantee of the mortgage extension agreement did not have such effect: Willock's Estate, 58 Pa. Superior Ct. 159 (1914) ; Joyce, to use, et al. v. Hawtof, 135 Pa. Superior Ct. 30 (1939) ; York Trust Co., Trustee, v. Haugh, 20 D. & C. 338 (1933). See also Kiedaisch et ux. v. Elkins Park National Bank et al., 325 Pa. 241 (1937).

Is the finding of fact justified, that the mortgagor had been released? The liability of the mortgagor is based upon her mortgage bond. Such a sealed instrument is accorded a greater dignity in the law than an ordinary unsealed obligation. After the lapse of six years all remedies to enforce the ordinary obligation, not under seal, are barred unless the obligor in some manner waives this defense. The remedies to enforce a sealed obligation are never barred by the mere lapse of time: Gill's Estate, 268 Pa. 500 (1920) ; Parsons Trading Co. v. Dohan et al., 312 Pa. 464 (1933). After the lapse of 20 years a presumption arises that the sealed obligation has been discharged: Gregory's Execs. v. Commonwealth, 121 Pa. 611 (1888) ; Wilson v. Eckman, 55 Pa. Superior Ct. 403 (1913) ; but, unlike the bar imposed by a statute of limitations, this presumption may be rebutted: Grenet's Estate, 332 Pa. 111 (1938). The operation of the presumption is

purely procedural. Its only effect is that after 20 years the obligee has the burden of proving nonpayment, whereas until then the obligor had the burden of proving payment.

In the instant case the mortgage bond on which the claim is made did not mature until August 19, 1921. As 20 years had not elapsed from that date at the time the matter was heard at the audit, the question to be determined by the auditing judge was whether the representatives of the deceased mortgagor's estate had sustained its burden of proving a discharge of the liability of the mortgagor on the bond. The question to be determined by the court in banc is whether he could have reasonably found that such burden had been carried.

The essential facts relating to the mortgagee's claim are that the mortgagor executed a bond and mortgage; the mortgagor conveyed the property; the grantees have thereafter made all payments of interest due; the present owner executed a mortgage extension agreement with the mortgagee; and the mortgagee presents a claim for payment of the principal debt within 20 years after its maturity.

From the transfer of the mortgaged premises by the mortgagor and the acceptance by the mortgagee of interest payments from the grantees, we cannot conclude that the mortgagee was "looking to the new owner" alone for payment, and that he was abandoning his claim against decedent. Clear proof is necessary to overthrow the reasonable inference that the mortgagee accepted interest from the grantees because the mortgagee's only concern was that he be paid by someone, and that he did not intend thereby to relinquish his right to proceed against decedent for any sums not paid him by the grantees. The mortgagee's failure to make any demand on the mortgagor may readily be explained by the fact that the grantees made payment of the interest due. The execution of the mortgage extension agreement in which the grantee assumed personal liability is not evidence of a

release or discharge of the mortgagor's liability, but is merely a step taken by the mortgagee to provide additional security for the mortgage debt.

The circumstances of this case are not inconsistent with the continued existence of the mortgagor's liability on her bond, nor do they raise any question as to the bona fide character of the claim. This distinguishes the instant case from the many decisions in which liability upon specialties was found barred as a question of fact, although less than 20 years had elapsed. Thus in Woodward v. Carson, 208 Pa. 144 (1904), it was questionable whether the obligation alleged to be barred by the lapse of less than 20 years was enforcible because it was only collateral for a note, while liability on the principal debt was denied. In Diamond v. Tobias, 12 Pa. 312 (1849), an issue as to the validity of the obligation itself was present. In Morrison v. Collins et al., 127 Pa. 28 (1889), the obligor had apparently failed to use as a set-off in a settlement of an open account the obligation which he later asserted. In Piper's Estate, 208 Pa. 636 (1904), not only had more than 30 years elapsed, in which case the rebuttable presumption of payment arises, but the obligee had failed to present his claim at the audit of the account of the executors of the will of the deceased obligor, and only asserted it at a later date upon an application for another accounting and to have the amount of the legacies applied on account of a deficiency remaining after the sale of the mortgaged premises.

We cannot concur in the conclusion delivered in the adjudication. This conclusion is not sustained by the facts, to wit, that the mortgagor has been released from liability.

The first, third, and fourth exceptions to the adjudication are, therefore, sustained. A decision upon the second exception becomes unnecessary, and that exception is dismissed pro forma. The claim of $3,300 is allowed, upon condition that said mortgage and bond be duly assigned to this estate by way of subrogation.

So amended, the adjudication is confirmed absolutely, and it is ordered that a schedule of distribution be filed, in duplicate.

LADNER, J., dissenting.—I would dismiss the exceptions in this case because there are sufficient circumstances in the evidence to support the learned auditing judge's finding as a "presumption of fact" that the deceased mortgagor's *personal* liability was released.

The three principles of law governing this case have been most recently restated and elucidated in Conrad's Estate, 333 Pa. 561, and may be set forth categorically as follows:

1. The distinction between a "legal presumption of payment" and a "presumption of fact of payment" must be carefully observed. The former can arise only *after* 20 years have passed, and will arise from the lapse of time alone. The latter may arise in *less* than 20 years but must be found from evidence of circumstances other than mere lapse of time. To quote the words of the Supreme Court in Conrad's Estate, 333 Pa. 561, 565:

". . . it is well established that, where there is a long delay, presumption of payment of a sealed instrument may arise in a period less than twenty years if there is a factual basis to support it other than the delay. The lapse of time combined with other circumstances is evidence from which a presumption of *fact* may arise that payment has been made."

2. In determining the sufficiency of the evidence or circumstances from which a "presumption of fact" may be found, the rule is, the longer the lapse of time from the due date of the debt, the less the evidence required to establish it: King's Exec. v. Coulter's Exec., 2 Grant 77; and as it approaches the 20 years only *slight circumstances* are necessary to find the presumption: Hughes v. Hughes, 54 Pa. 240; Woodward v. Carson, 208 Pa. 144.

3. Where the obligor is dead and the claim was due for many years in his lifetime, with no effort to collect the same, nor any explanation made of the failure to do

so, the familiar doctrine that long-overdue claims not presented until after death are to be viewed with the greatest suspicion applies with equal force to claims on specialties as to ordinary debts: Conrad's Estate, supra, at page 567.

In view of these applicable principles, I conceive the question to be decided by the court in banc is, whether the circumstances presented to the auditing judge are sufficient to support his finding that the personal liability of the obligor had been released: Grenet's Estate, 332 Pa. 111. Exactly what these circumstances may be, it was said in Diamond v. Tobias, 12 Pa. 312, 314, "never has been, and never will be, defined by the law. There must be some circumstances; and where there are any, it is safe to leave them to the jury." And it has been said:

"No fixed rule of substantive law or evidence can be laid down as to the scope, quality or quantity of the additional circumstances necessary to support the presumption of payment arising from a delay of less than twenty years. Each case depends upon its individual circumstances. Such proof as the debtor's ability to pay during that period, or, a statement of the creditor or obligee that the debt was paid, or it was regarded as not owing, or he had destroyed the note, have been held sufficient in conjunction with the lapse of a long period of years before bringing suit": Conrad's Estate, supra, p. 566.

Illustrative of the kind of circumstances which, together with a long lapse of time, have been held sufficient to raise the "presumption of fact" are the following: Woodward v. Carson, supra, where a judgment was shown to have been collectible and that no execution was issued thereon for 13 years after entry; Diamond v. Tobias, supra, where a transcript of a judgment of a justice of the peace was not filed in the common pleas court until more than 19 years after it had been rendered, and there was nothing to show that an execution had ever been issued by the justice; Morrison v. Collins et al., 127 Pa. 28, where it was said the fact that the holder of a note under seal was

constantly pressed for money while defendant was abundantly able to pay, would be sufficient; and the same was held in Hughes v. Hughes, supra.

What, then, were the circumstances in the evidence before the auditing judge which, together with the long lapse of 18 years, support his findings? I catalogue them as follows: (1) No demand, claim, or suit was ever brought in decedent's lifetime, notwithstanding the fact that the principal of the mortgage debt was long overdue; (2) her executor's account shows that at the time of her death she had abundant ability to pay the debt, and it is not shown she was ever without means; (3) the mortgaged property was conveyed away by decedent subject to the mortgage within one year after the date of the mortgage, and the last payment of interest made by her was more than 20 years from the date of the audit; and (4) the mortgagee in 1929 entered into an extension of mortgage agreement with a subsequent grantee who expressly assumed personal liability for the payment of the bond.

These four circumstances, together with the fact that the bond is more than 20 years old from its date (August 19, 1919), and nearly 19 years from its maturity date (August 19, 1921) had passed at the time it was presented for audit, would seem sufficient for a trier of the facts to find a presumption of *release* of decedent's personal liability: Piper's Estate, 208 Pa. 636; Bachman's Estate, no. 1780 of 1937, and the authorities above cited.

While most of the cases cited speak of presumptions of payment, they are equally applicable to presumptions of release or discharge. A release need not be under seal nor necessarily in writing, and it may be implied from circumstances: 53 C. J. 1198, secs. 7, 8. A release is akin to payment. In a sense, a release is but a species of payment. The greater includes the less, and the same principles of law ought, therefore, to govern; indeed, it was expressly so held in Piper's Estate, supra, at p. 641.

Nor does Willock's Estate, 58 Pa. Superior Ct. 159, present any difficulty. That case merely rules that the execution by the mortgagee of an extension agreement, *of itself*, does not operate to release a mortgagor from his primary and personal liability on the bond. It does *not* rule that the execution of such an agreement cannot be regarded as one of the circumstances which, with others and a long lapse of time, will support a finding such as the auditing judge has here made. It may also be pointed out that in Willock's Estate foreclosure of the mortgaged property had taken place, the claim there being for the deficiency arising from the sheriff's sale. Moreover, only *seven years* had elapsed at the time of the audit from the date the obligor had conveyed away the property. Here nearly *19 years* had passed.

To my view a controlling authority ruling the instant case is Piper's Estate, in which the learned Judge Penrose, whose opinion was adopted by the Supreme Court, makes plain (on p. 639) that he would have decided the matter before him exactly the same way even if the conveyance by the deceased mortgagor, "under and subject to the mortgage debt," were to be considered as an acknowledgment by the mortgagor as of the date of that deed, which was only 11 years before the date of the claim. The reason was well stated by that able jurist as follows (p. 640):

"The policy of the law is against keeping open the administration of the estate of a decedent, and continuing, indefinitely, a liability upon his personal obligations. Hence, it was held in Quain's Appeal, 22 Pa. 510, followed by Williams' Appeal, 47 Pa. 283, that the covenant of one who had purchased land upon ground rent could only be enforced for rent falling due after his death, as against the land. It is not easy to see the distinction between the personal liability of a mortgagor, on the bond accompanying the mortgage, after he has sold the land subject to the mortgage, and after his death, and that of a purchaser on ground rent on his covenant to pay. Theoretically, the

bond is the principal debt and the mortgage the collateral, but in general the reverse is the real relation; and after the lapse of many years, during all of which the creditor has received his interest from the successive purchasers of the mortgaged property, with no suggestion of claim for the principal, though long overdue, from the original debtor on his bond, it may well be presumed that personal liability has been released or discharged."

Having come to the conclusion that there are sufficient circumstances from which a presumption of fact of release might be found, I would sustain the auditing judge's finding because it is entitled to the same respect as a verdict by a jury: Schoonover's Estate, 44 Pa. Superior Ct. 76.

Judge Bolger joins in this dissent.